# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MIDDLETOWN WATER JOINT VENTURE LLC,** | : | CIVIL ACTION NO. 1:19-CV-1402 |
| | : | |
| | : | **(Chief Judge Conner)** |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| **BOROUGH OF MIDDLETOWN,** | : | |
| | : | |
| Respondent | : | |

## MEMORANDUM

Both parties in this case have asked us to enforce an arbitration agreement. Middletown Water Joint Venture LLC ("Middletown Water") petitions the court to confirm an arbitration award that it claims grants it the right to compensation for certain contractually defined projects. (See Docs. 1, 14). The Borough of Middletown ("Middletown Borough" or "Borough") opposes the petition and claims it has the right to review and approve of, or disapprove of, those same contractually defined projects. (See Docs. 7, 15). We will deny Middletown Water's petition.

## I. Factual Background & Procedural History

This case arises from a contractual relationship and subsequent arbitration proceedings between a governmental body and a private contractor. Middletown Borough is a subdivision of the Commonwealth of Pennsylvania. (Doc. 1 ¶ 9). Middletown Water is a Delaware limited liability company headquartered in New York. (Id. ¶ 8). The parties entered into a Municipal Water and Wastewater Utility System Concession and Lease Agreement ("Concession Agreement" or "Agreement") on September 30, 2014. (Id. ¶ 2).

### A. Concession Agreement

Under the Concession Agreement, Middletown Water leased Middletown Borough's water and sewer systems for a 50-year period. (Doc. 1-2 at 2).[1] The Agreement makes Middletown Water responsible for all capital improvements to the Borough's system, including "Major Capital Improvements." (Id. at 3; Doc. 1-4 at 64). A "Major Capital Improvement" is

> (a) any capital improvement required to increase the treatment capacity of the Wastewater Utility System as contemplated by Section 3.21, (b) any amount required to fund a Casualty Cost in excess of net insurance proceeds under Section 13.3(a) and *(c) any other capital improvement to the Utility System (1) having an estimated cost in excess of $500,000, Adjusted for Inflation from the Closing Date to the dale such estimate is made and (2) which, in the written opinion of an Engineering Firm, constitutes an expansion to or renewal, replacement or betterment of the Utility System and has a useful life of at least five years*.

(Doc. 1-4 at 19 (emphasis added)). As described below, Middletown Water may seek reimbursement for Major Capital Improvements. (See id. at 69, 77).

Section 4.5 of the Concession Agreement, entitled "Major Capital Improvement Project Implementation," describes the process that Middletown Water must undertake before performing Major Capital Improvements. (Id. at 67-70). In the spirit of brevity, we will describe only the processes and related information relevant to the instant dispute.

---

[1] The Middletown Borough Authority ("Authority") owns the assets that make up Borough's water utility system. (Doc. 1-4 at 1). The Authority leased the water utility system and its assets to the Borough. (Id.) References to the Authority in the Concession Agreement are therefore treated as references to the Borough.

2

For any project fitting the definition of Major Capital Improvement, Middletown Water must first create a "Major Capital Improvement Conceptual Design," which is simply a "basic description" of the Major Capital Improvement. (Id. at 67). Pursuant to subsection 4.5(a)(iii)—entitled "Review and Approval"—the Major Capital Improvement Conceptual Design is subject to the review, commentary, and approval of the Borough. (See id. at 67-68). Middletown Water must attempt to address the Borough's comments, resolve those comments, and thereafter distribute meeting minutes "for Approval by the [Borough]." (Id.) The Borough then either approves of or disapproves of the minutes. (Id. at 68). Approval of the minutes amounts to approval of the Major Capital Improvement Conceptual Design. (Id.)

After the Major Capital Improvement Conceptual Design is approved, Middletown Water must submit a report called a "Major Capital Improvement Substantially Complete Design." (Id.) This report must include "detailed, substantially complete engineering drawings, plans, specifications and technical documents to show the character, detail and scope of the work and services to be performed with respect to the Major Capital Improvement." (Id.) This report is also subject to Borough review, comment, and approval pursuant to subsection 4.5(b)(iv), entitled "Review and Approval." (Id. at 68-69). The approval process for this report is similar to that applied to the Major Capital Improvement Conceptual Design. (Id.) After receiving approval of the Major Capital Improvement Substantially Complete Design, Middletown Water may take the necessary steps to begin construction. (Id. at 69-70).

Section 7.1(f) allows Middletown Water to seek a "Capital Cost Recovery Charge" for Major Capital Improvements. (Id.; see also id. at 77). A "Capital Cost Recovery Charge" is a reimbursement and consists of: (i) the amount of principal and debt incurred to finance the Major Capital Improvement; and (ii) the return on equity contributed to pay capital costs associated with the Major Capital Improvement, equal to a standardized return. (Id. at 7). To impose a Capital Cost Recovery Charge, Middletown Water must submit a financial report regarding implementation of the Major Capital Improvement. (Id. at 77). The report is then reviewed by and "subject to the Approval of the [Borough]." (Id.) The Borough may not "unreasonably condition[], delay[] or withh[o]ld" approval of Middletown Water's report. (Id.) Middletown Water retains "sole and absolute discretion" to begin construction on a Major Capital Improvement before a Capital Cost Recovery Charge is approved. (Id. at 69-70). Its decision to do so, however, "shall not alter or amend the obligations of the Parties to agree upon and the Authority to permit the imposition of the Capital Cost Recovery Charge for the Major Capital Improvement." (Id.)

### B. Arbitration

Article 19 of the Concession Agreement provides that "[a]ny dispute arising out of, relating to, or in connection with this Agreement" shall be resolved through a combination of informal dispute resolution, mediation, and arbitration. (Id. at 136-41). While performing under the Agreement, the parties disagreed about whether certain capital improvements—specifically, "Water Main Replacement Work"—qualified as Major Capital Improvements for which Capital Cost Recovery

Charges could be imposed. (Doc. 1-2 at 4). Following failed negotiations, the parties sought arbitration. (Id. at 9). After several days of hearings, the arbitration panel issued its final award in July 2019. (Id. at 9-16).

### 1. *Arbitration Panel's Final Award*

As relevant here, the arbitration panel was tasked with deciding whether "Water Main Replacement Work constitutes a Major Capital Improvement under the terms of the Concession Agreement, and [whether] the [Middletown Water] is entitled to impose Capital Cost Recovery Charges for Water Main Replacement Work." (Id. at 17). "Water Main Replacement Work" involves annual replacement of 2,500 linear feet of water mains. (Id. at 4). The panel concluded: (a) that Water Main Replacement Work is a Major Capital Improvement under the Concession Agreement; and (b) that Middletown Water is entitled to impose and recover Capital Cost Recovery Charges for Water Main Replacement Work. (Id. at 17, 22, 52). Critical here is the panel's holding in Paragraph 1(e) of Section XII of the award:

> [Middletown Borough] is enjoined from taking any action to oppose, frustrate, dispute, object to or interfere with [Middletown Water's] recovery of any Capital Cost Recovery Charges due for the Water Main Replacement Work it has performed or will perform in the future when such work otherwise meets the requirements of clause (c) of the definition of Major Capital Improvement in the Concession Agreement.

(Id. at 52-53).

In reaching its conclusion, the panel thought the Concession Agreement's terms were unambiguous. (Id. at 20-22). It nonetheless supported its holding by

5

reference to certain extracontractual evidence confirming that Water Main Replacement Work constitutes a Major Capital Improvement. (Id. at 22-27).

### 2. *Arbitration Panel's "Clarification of Award"*

After the final award was issued, Middletown Borough timely filed an application for clarification of award. (See Doc. 15-2). The Borough specifically requested clarification of Paragraph 1(e)'s injunctive language that prohibits it from interfering with Middletown Water's ability to recover Capital Cost Recovery Charges. (Doc. 15-2 at 1-2; Doc. 1-3 at 1). The panel responded in its Disposition of Application for Clarification of Award that "the intent of its award is clear." (Doc. 1-3 at 1). It nonetheless stated that

> Paragraph 1(e) of Section XII of the Award is not intended to alter or modify any terms or provisions of the Concession Agreement, and in particular, is not intended to detract or require the Parties to deviate from either the procedures set forth in Section 4.5 of the Concession Agreement entitled Major Capital Improvement Project Implementation, or the procedures set forth in Section 7.1(f) of the Concession Agreement for the imposition of a Capital Cost Recovery Charge for Major Capital Improvements.

(Id. at 1-2). Middletown Borough has not submitted a motion to vacate, modify, or correct the panel's award. (Doc. 1 ¶ 6; Doc. 15 at 12).

### C. Procedural History

The underlying arbitration proceeding in this case commenced on March 20, 2018, and the panel issued its final award on July 10, 2019. Middletown Water then filed a petition to confirm the arbitration award in this court. Middletown Borough

answered that petition and Middletown Water filed its motion for judgment on the pleadings shortly thereafter. The motion is fully briefed and ripe for disposition.

## II. Legal Standard

A motion for judgment on the pleadings is the procedural hybrid of a motion to dismiss and a motion for summary judgment. Westport Ins. Corp. v. Black, Davis & Shue Agency, Inc., 513 F. Supp. 2d 157, 162 (M.D. Pa. 2007). Rule 12(c) of the Federal Rules of Civil Procedure provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). To succeed on a Rule 12(c) motion, the movant must clearly establish that no material issue of fact remains to be resolved and that the movant "is entitled to judgment as a matter of law." Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005); see 5C CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1368 (3d ed. 2015). A Rule 12(c) motion for judgment on the pleadings is decided under a standard similar to a Rule 12(b)(6) motion to dismiss. See Zimmerman v. Corbett, 873 F.3d 414, 417 (3d Cir. 2017). That is, judgment on the pleadings should be granted only when, accepting as true the facts alleged by the nonmovant and drawing "all reasonable inferences" in that party's favor, the movant is entitled to judgment as a matter of law. See id. (citation omitted).

## III. Discussion

In its motion for judgment on the pleadings, Middletown Water seeks enforcement of the arbitration panel's final award. It specifically asks that we enjoin Middletown Borough from rejecting Capital Cost Recovery Charges for

7

Water Main Replacement Work. Middletown Water additionally claims that Middletown Borough is wrongfully attempting to amend the award outside the 30-day limitations period. Middletown Borough rejoins that it is not seeking to modify or vacate the award but is instead also asking us to enforce it. The Borough asks that we read the award in light of the panel's clarification, which it argues preserved various review and approval procedures. For the reasons described below, we agree with the Borough.

A federal court sitting in diversity, like here, applies state substantive law. Erie R.R. v. Tompkins, 304 U.S. 64, 78-80 (1938).[2] Under Pennsylvania law, which governs the applicable limitations period, (see Doc. 1-4 at 145), the court "shall confirm an award" unless there is a timely motion to vacate, modify, or correct the award, 42 PA. CONS. STAT. § 7313. A motion to vacate, modify, or correct the award must be filed within 30 days after the award is made. Id. § 7342(b). This limitations period applies to both common law and statutory arbitration. See Moscatiello v. Hilliard, 939 A.2d 325, 327 (Pa. 2007) (citations omitted).

The Commonwealth's 30-day limitations period is strictly enforced. See Serv. Emp. Int'l Union, Local No. 36, AFL-CIO v. Office Ctr. Servs., Inc., 670 F.2d 404, 412

---

[2] In resolving arbitration disputes, courts sitting in diversity must determine whether the dispute is governed by the Federal Arbitration Act or state law. See State Farm Mut. Auto. Ins. Co. v. Coviello, 233 F.3d 710, 713 n.1 (3d Cir. 2000) (citations omitted). Federal law applies if the arbitration agreement implicates interstate commerce. Id. (citation omitted). We need not make this determination, however, because the parties agreed to a valid choice-of-law provision and do not dispute that Pennsylvania law applies. (Doc. 1-4 at 145). In any event, "there is no meaningful difference between federal and Pennsylvania law when reviewing the scope of an arbitration clause." Coviello, 233 F.3d at 713 n.1.

(3d Cir. 1982). The Third Circuit has explained that a defendant must raise all "important defenses to an arbitration award . . . within the period prescribed for actions to vacate rather than wait to raise them as defenses in a confirmation proceeding." Id. This rule consequently prohibits untimely defenses that "challenge[] the underlying validity of the arbitration proceeding and award." Id. Middletown Borough concedes that it did not file a motion to vacate, modify, or correct the panel's award. (Doc. 1 ¶ 6; Doc. 7 ¶ 1).

We conclude that Middletown Borough is not required to forego the review-and-approval processes established in the Concession Agreement and blindly compensate Middletown Water for Water Main Replacement Work. As an initial matter, we note that Middletown Water relies heavily on the panel's seemingly absolute use of the word "recovery"—specifically, its statement that the Borough "is enjoined from taking any action to oppose, frustrate, dispute, object to or interfere with [Middletown Water's] recovery of any Capital Cost Recovery Charges due for the Water Main Replacement Work." (See generally Doc. 14). This word choice, says Middletown Water, suggests that the panel vitiated the Borough's right to approve of Capital Cost Recovery Charges for Water Main Replacement Work. (See id. at 8-9). The final award does authorize Middletown Water to recover Capital Cost Recovery Charges for Water Main Replacement Work. (Doc. 1-2 at 52). It also prohibits the Borough from hindering that recovery. (Id. at 52-53). But this prohibition applies only to Capital Cost Recovery Charges that are "due" from system customers. (Id. at 52). Under the Concession Agreement's plain terms, Capital Cost Recovery Charges do not become due until they have been approved

9

by the Borough.  (See id. at 69, 77).  The panel's award was therefore not as absolute as Middletown Water claims.

Several other reasons support this reading.  *First*, the panel's focus, reasoning, and conclusion confirm that its award did not eliminate the Concession Agreement's review and approval provisions.  The panel addressed a narrow question: Whether "Water Main Replacement Work constitutes a Major Capital Improvement under the terms of the Concession Agreement, and [whether] [Middletown Water] is entitled to impose Capital Cost Recovery Charges for Water Main Replacement Work."  (Id. at 17).  The panel answered that question in the affirmative.  (Id. at 17-27).  Its award focused on the threshold inquiry of whether this type of work constitutes a Major Capital Improvement; it did not discuss the process by which Capital Cost Recovery Charges are reviewed and approved by Middletown Borough.  As described above, Capital Cost Recovery Charges must go through an approval process to become "due."  *Supra* at pp. 2-4.  All this is to say that Middletown Water is entitled to impose Capital Cost Recovery Charges, but its ability to ultimately recover those charges is dependent upon the Borough's approval and charges becoming due.

*Second*, the panel's clarification makes clear that its final award maintained the Concession Agreement's review and approval procedures.  Middletown Borough timely asked the panel to elaborate on the scope of the prohibitive language in Paragraph 1(e) of the award.  (Doc. 1-2 at 52-53; Doc. 15-3 at 1).  The panel responded in no uncertain terms: "[T]he Award is not intended to alter or modify any terms or provisions of the Concession Agreement, and in particular, is

10

not intended to detract or require the Parties to deviate from either the procedures set forth in Section 4.5 . . . or the procedures set forth in Section 7.1(f)." (Doc. 1-3 at 1-2). Those sections describe the Borough's rights to review and approve Middletown Water's proposed Capital Cost Recovery Charges and associated submissions. The panel thus preserved the process described in the Concession Agreement.

*Third*, and lastly, Middletown Borough's so-called "defense" (*i.e.*, its different reading of the panel's final award) is not the sort that must be raised in a motion to vacate, modify, or correct within 30 days. Middletown Water cites two distinguishable cases—Service Employees International Union, Local No. 36, AFL-CIO v. Office Center Services, Inc., 670 F.2d 404 (3d Cir. 1982), and SEIU Healthcare Pennsylvania v. Regional Hospital of Scranton, No. 3:13-CV-02669, 2015 WL 150069 (M.D. Pa. Jan. 12, 2015)—in support of its argument that Middletown Borough is attempting to submit a disguised motion to vacate, modify, or correct the award beyond the permitted time period. (See Doc. 14 at 10). In both Office Center Services and SEIU, the party opposing confirmation of the arbitration award sought to *nullify* or *invalidate* the award after the applicable deadline. The respondent in Office Center Services untimely attempted to bring a due process claim, among others, to challenge the arbiters' findings and conclusions, and declare the arbiters' award unenforceable. See Office Ctr. Servs., 670 F.2d at 406 n.5. The respondent in SEIU similarly tried to attack the arbiters' award on the theory that it was unenforceable. SEIU, 2015 WL 150069, at *11. In both cases, the court correctly rejected the untimely requests. Middletown Borough is not

11

"challeng[ing] the underlying validity of the arbitration proceeding and award." Office Ctr. Servs., 670 F.2d at 412. It is asking us to *enforce* the award according to its understanding of the award's scope. We thus reject Middletown Water's argument that the Borough is advancing an improper request to vacate, modify, or correct the panel's award.

IV. **Conclusion**

We conclude that the arbitration award does not exempt Middletown Water's Water Main Replacement Work from the procedures described in Sections 4.5 and 7.1(f) of the Concession Agreement regarding review and approval of Capital Cost Recovery Charges. We emphasize, however, that under the terms of those sections, the Borough may not "unreasonably condition[], delay[] or with[o]ld" its review and approval of the Middletown Water's relevant submissions. (Doc. 1-4 at 77).[3] For

---

[3] We make one final point of clarification. Middletown Water asks that we enjoin Middletown Borough from preventing its recovery of "*any* Capital Recovery Charges due for *any* Major Capital Improvements." (Doc. 1 at 18 (emphasis added)). Strangely, Middletown Borough also includes this expansive language in its proposed judgment. (Doc. 7 at 5). The final award did not make such a far-reaching holding. It applies only to Middletown Water's right to recover "Capital Cost Recovery Charges due for the Water Main Replacement Work." (Doc. 1-2 at 52).

12

these reasons, we will deny Middletown Water's motion (Doc. 13) for judgment on the pleadings. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: April 13, 2020